UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| GABRIEL WEST | CIVIL ACTION NO. 22-5738 |
| VERSUS | JUDGE EDWARDS |
| INTERNATIONAL PAPER CO | MAG. JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is Defendant's Motion for Summary Judgment filed by International Paper Company ("IP" or "Defendant").[1] Plaintiff, Gabriel West ("Plaintiff" or "West"), opposed the motion,[2] and Defendant replied.[3] After careful consideration of the law, the facts in the record, and the arguments and submissions of the parties, for the following reasons, Defendant's Motion for Summary Judgment is **GRANTED**.

### I.     FACTUAL BACKGROUND

West, an African American employee of IP, brings this action under 42 U.S.C. § 1981, alleging race discrimination and retaliation in connection with his unsuccessful attempt to certify as an A Systems Operator at IP's Mansfield Mill.

Plaintiff was hired by IP in 2004 to work as a trainee at the Mansfield Mill located in Mansfield, Louisiana.[4] The paper machines at the Mill are managed by a control room—the location of the computer processing components of the paper

---

[1] R. Doc. 20.
[2] R. Doc. 27.
[3] R. Doc. 32.
[4] R. Doc. 20-1 at 5.

machines.[5] The operators responsible for that equipment are referred to as "Control Room Operators."[6] While working at IP, Plaintiff progressed to the position of C Systems Operator.[7]

Plaintiff ultimately applied for a promotion to A Systems Operator on December 2, 2019. Plaintiff was deemed the Best Qualified Candidate and permitted to enter the six-month certification process to become an A Systems Operator.[8] When a member accepts a promotion into a higher group, the member must (1) train a certain number of hours and (2) pass a certification exam within 6 months or return to the position held before the promotion.[9] Based on the date of promotion, Plaintiff was required to pass his certification exam by June 23, 2020.[10] If a member fails to timely pass, they must wait twelve months before testing again.[11]

Plaintiff contends there were a number of delays throughout his attempt to certify. According to Plaintiff, there is normally an expectations meeting held shortly after promotion occurs, and his was rescheduled and not completed until January 31, 2020.[12] The expectations meeting normally consists of a Learning Leader, Crew Leader, a Trainer, and the employee attempting the promotion.[13] Plaintiff did not meet with his Learning Leader until February 20, 2020, nearly two months after the

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.* (Under Defendant's policy, the "Best Qualified Candidate" is determined based on four criteria: time certified, member engagement, performance on a technical knowledge exam, and scenario troubleshooting.)
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] R. Doc. 27 at 5.
[13] *Id.*

start of his certification window.[14] According to Plaintiff, his training was further limited when he was frequently reassigned to duties outside the control room, while white comparators were granted uninterrupted training or given additional coverage through overtime shifts.[15] Plaintiff also claims he was not assigned to any special projects or permitted to sit in on others' training sessions.[16] Plaintiff asserts that special projects allow employees to sit with Learning Leaders and get more familiarized with the learning material to pass certifications.[17]

Defendants dispute these claims and cite the declaration of Learning Leader Robert Gregorski who oversaw Plaintiff's certification for A Systems Operator.[18] Gregorski stated that during Plaintiff's certification process, IP had instituted COVID-19 training guidelines that resulted in Plaintiff receiving an additional two months of study time.[19] As for the special projects, Gregorski stated that "Special Projects are determined by the Area Manager, and they are completely unrelated to certification and promotion opportunities."[20]

Plaintiff completed the training portion of the promotion process on June 19, 2020.[21] Subsequently, his certification exam was scheduled for August 18, 2020.[22] Plaintiff asserts he was scheduled to work a graveyard shift ending at 6:00 a.m. on

---

[14] *Id.* (The Learning Leader issues assignments to the employee attempting the promotion during the certification process).
[15] *Id.*
[16] *Id.* at 5-6.
[17] *Id.*
[18] (citing R. Doc. 20-4 at 2)
[19] R. Doc. 20-4 at 3. (Plaintiff's six month training deadline began on December 19, 2020 but the certification exam took place on August 18, 2020—more than six months later per the COVID-19 policy).
[20] *Id.* at 4.
[21] R. Doc. 20-1 at 9.
[22] R. Doc. 20-1 at 8.

the day of the exam and was required to return for the exam at 3:00 p.m. the same day—despite there being two other operators on shift.[23] Plaintiff was also scheduled to go back to work after the exam. In contrast, Plaintiff alleges a white employee, Billie Sloan ("Sloan"), was allowed to take a personal holiday on the day of his certification.[24]

The certification panel administered the exam, which required Plaintiff to answer a series of "critical questions" relating to the A Systems Operator position.[25] According to Defendant's Training and Certification Policy, critical questions are "extremely important" and designed to assess the knowledge and skill specific to the position.[26] The policy also states "[c]ritical questions must be answered correctly during certification."[27] Defendant asserts that during the certification exam, Plaintiff failed to correctly answer multiple critical questions.[28] Consequently, he could not achieve the required 90% completion rate, and the exam was terminated once it became clear he could not pass.[29]

Plaintiff disputes this account.[30] During the exam, Plaintiff alleges he answered the critical questions but was subjected to multiple follow-up questions from board members, particularly Greg Palmer.[31] Plaintiff contends these follow-ups were excessive and not administered uniformly across candidates.[32] He states that

---

[23] R. Doc. 27 at 6-7.
[24] *Id.*
[25] R. Doc. 20-1 at 8-9.
[26] R. Doc. 20-3 at 190.
[27] *Id.*
[28] R. Doc. 20-1 at 9.
[29] *Id.*
[30] R. Doc. 27 at 8.
[31] *Id.* at 7-8.
[32] *Id.* at 7.

when he failed to respond to Palmer's satisfaction, Palmer became visibly upset and left the room, and the exam was terminated after approximately 20 minutes—before Plaintiff had the chance to complete it or revisit skipped questions.[33]

Plaintiff asserts he was not provided another opportunity to certify.[34] He contrasts this with the case of Sloan, who, despite failing the exam, was granted additional training time beyond the six-month window and ultimately received multiple attempts to certify.[35] Defendant admits that Sloan did fail his certification panel; however, pursuant to IP's policy, a member is allowed to retest if they have additional time available.[36] In order to retest a member must turn in their certification paperwork before the stipulated 30-day window prior to the test date.[37] Defendant asserts that Sloan was allowed to re-test retest only because he turned in his forms early enough, and there was still time available in the 30-day window.[38] Defendant asserts Plaintiff did not submit his paperwork before the stipulated 30-day window.[39]

Plaintiff subsequently filed a complaint with Human Resources on April 7, 2021, alleging racial discrimination in the training and certification process.[40] Following that complaint, he claims he was retaliated against by being excluded from

---

[33] *Id.* at 8.
[34] *Id.*
[35] *Id.* 8-9.
[36] R. Doc. 32 at 4.
[37] *Id.* (citing 20-4 at 3).
[38] *Id.*
[39] *Id.* (and that Plaintiff admitted in his deposition that he had no knowledge regarding how the Learning Leader calculated the dates for Sloan's certification attempts).
[40] R. Doc. 27 at 9.

control room shift opportunities and by Defendant's depay of Plaintiff's medical leave.[41]

## II. LEGAL STANDARD

Summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[42] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[43] "A dispute is genuine if the summary judgment evidence is such that a reasonable jury could return a verdict for the [non-movant]."[44] In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party."[45]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[46] "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the

---

[41] *Id.*
[42] Fed. R. Civ. P. 56(a).
[43] *Hyatt v. Thomas,* 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[44] *Id.* (internal quotations omitted).
[45] *Total E&P USA Inc. v. Kerr-McGee Oil & Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).
[46] *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting *Anderson,* 477 U.S. at 247).

record contains no support for the non-moving party's claim."[47] Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.[48]

### III.    LAW & ANALYSIS

On October 18, 2022, Plaintiff filed the present lawsuit, alleging that Defendant violated 42 U.S.C. § 1981 by (1) discriminating against him on the basis of race by denying him promotion while promoting other similarly situated employees outside of his protected class to control operator positions, and (2) retaliating against him by banning him from all control room training and not allowing him to work as a substitute.[49] The Court will address each claim in turn.

####    A.    § 1981 Discrimination Claim

The summary judgment test for race discrimination claims under § 1981 is the same as the test for race discrimination claims under Title VII.[50] Because Plaintiff does not allege any direct evidence of discrimination the *McDonnell Douglas* burden-shifting analysis applies.[51] "To survive summary judgment under *McDonnell Douglas,* the plaintiff must first present evidence of a prima facie case of discrimination."[52] To establish a prima facie case of discrimination, Plaintiff must show (1) he is a member of a protected class; (2) he is qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside

---

[47] *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002).
[48] *Id.*
[49] R. Doc. 1 at 5.
[50] *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 316 (5th Cir. 2004).
[51] *Id.* (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)).
[52] *Id.* at 317.

the protected class or was treated less favorably than other similarly situated employees outside the protected group.[53] If Plaintiff demonstrates a prima facie case, the burden shifts to IP to articulate a legitimate, non-discriminatory reason for its challenged actions.[54] Finally, if IP meets its burden, Plaintiff must then offer sufficient evidence to raise a genuine issue of material fact as to whether the employer's reasons are false or "unworthy of credence" and, thus, merely a pretext for discrimination.[55] Plaintiff retains the burden of persuading the fact finder that impermissible discrimination motivated the adverse employment action.[56]

In Defendant's summary judgment motion, it argues that Plaintiff has failed to establish two elements of his prima facie case: Defendant asserts that (1) Plaintiff was not qualified for the position of A Systems Operator and (2) Plaintiff was not treated less favorably than similarly qualified individuals outside of the protected class.[57] The Court will address each claim in turn.

        1.     **Plaintiff was not qualified for the position of A Systems Operator**

As discussed above, on December 19, 2019, West applied for the A Systems Operator position. Defendant argues that Plaintiff was not qualified for the position of A Systems Operator because promotion required passing a certification exam, and Plaintiff failed to correctly answer at least 90% of the critical questions.[58] In response, Plaintiff acknowledges the 90% requirement but contends that the exam's grading is

---

[53] *Bryan v. McKinsey & Co.,* 375 F.3d 358, 360 (5th Cir.2004).
[54] *Pacovsky v. City of Booneville Mississippi*, 347 Fed.Appx. 42, 43–44 (5th Cir.2009).
[55] *Id.*
[56] *Id.*
[57] R. Doc. 20-1 at 13-14.
[58] *Id.*

inherently subjective.[59] While applicants are provided the exam questions in advance, Plaintiff argues that, because they are not also given the correct answers, the determination of correctness is left to the discretion of the examining board.[60] Plaintiff further asserts that board members may increase the difficulty of a question by asking unlimited follow-up questions, and failure to answer those follow-ups correctly results in failure of the original question.[61]

Assuming *arguendo* that Plaintiff could establish this element of his prima case of race discrimination, IP has met its burden of producing a legitimate nondiscriminatory reason for promoting other applicants to System Operator positions—that those applicants met the training and certification requirements. The burden of persuasion therefore shifts back to Plaintiff, but he fails to present evidence sufficient to raise a genuine dispute of material fact as to whether Defendant's stated reason was pretextual.

"Selection of a more qualified applicant is a legitimate and nondiscriminatory reason for preferring one candidate over another."[62] Although Plaintiff contends that the certification exam was subjectively administered, the Fifth Circuit has made clear that "[t]he mere fact that an employer uses subjective criteria is not, however, sufficient evidence of pretext.... [A]bsent *evidence* that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring

---

[59] R. Doc. 27 at 7.
[60] *Id.*
[61] *Id.*
[62] *Sabzevari v. Reliable Life Ins. Co.*, 264 F. App'x 392, 395 (5th Cir.2008) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 251–53 (1981)).

or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII."[63]

In *Walton v. Vilsack*, the court granted summary judgment to the defendant in a Title VII failure-to-promote case involving an interview-based ranking system. The court bypassed an analysis of whether the plaintiff had established her prima facie case stating that because the defendant had offered a legitimate nondiscriminatory reason for promoting another candidate, then the burden shifted back to the plaintiff to show that reason was pretextual. The court reiterated that subjective criteria alone do not amount to evidence of pretext and emphasized that "the relevant question is not 'whether or not [the hiring official's] perception of [Plaintiff's] performance was accurate,' but whether she has carried her burden to 'provide the court with relevant record facts on which to base a contrary conclusion' and draw the inference that [the employer's] stated reasons were pretexts for discrimination."[64] Here, Plaintiff offers no evidence that the exam's subjectivity was used to mask discrimination.

### 2. Plaintiff was not treated less favorably than similarly qualified individuals outside of the protected class

The Plaintiff has not demonstrated through competent summary judgment evidence that he was treated less favorably than similarly qualified individuals outside his protected class. In each case of alleged treatment, Plaintiff was either not actually treated less favorably under IP's policies or the comparator was not similarly

---

[63] *Manning v. Chevron Chem. Co.,* 332 F.3d 874, 882 (5th Cir. 2003) (citing *Millbrook v. IBP, Inc.,* 280 F.3d 1169, 1176 (7th Cir.2002)); *also see Riney v. Lockheed Martin Corp.*, 831 F. App'x 698, 703 (5th Cir. 2020) ("the mere fact that an employer uses subjective [promotional] criteria is not sufficient evidence of pretext.").

[64] *Id.* (citing *Bright v. GB Bioscience Inc.,* 305 F. App'x 197, 205 (5th Cir. 2008)).

situated. The Plaintiff makes claims of such treatment, and the Court will review them in turn. Further, even assuming Plaintiff could identify such treatment and a similarly qualified comparator, the Defendant has provided legitimate, nondiscriminatory reasons, and Plaintiff has not provided evidence of pretext.

### a. White candidates granted extra time to retest

Plaintiff asserts in his Opposition that his white co-workers, Kevin Berly, Phillip McDevitt, J. Ferguson, Trent Soileau, and Sloan were granted extensions of time to retest, despite their allotted time being up.[65] Starting with Berly, Defendants highlight that Berly was seeking promotion to C Operator, not A Systems Operator, therefore, they are not similarly situated.[66]

For McDevitt, Plaintiff asserts in his opposition (without evidentiary support or citation), that on April 5, 2022, a meeting was held to give McDevitt more time to retest and certify—an additional 61 days.[67] Plaintiff asserts that there was a training extension meeting held to extend Ferguson's time to certify and that such an extension was granted.[68] Defendant asserts that Plaintiff's deposition is completely void of any mention of McDevitt or Ferguson being allowed to retest, and there is otherwise no competent summary judgment evidence to show they were allowed to retest.[69]

---

[65] R. Doc. 27 at 12.
[66] R. Doc. 32 at 3, n.8.
[67] R. Doc. 27 at 13.
[68] R. Doc. 27 at 13 (citing R. Doc. 25-7 at 1).
[69] R. Doc. 32 at 3.

Plaintiff next contends that he was treated less favorably than Soileau and Sloan who were allegedly allowed to retest or received more leniency in the certification process.[70] However, Plaintiff admitted in his deposition that he has no personal knowledge of the certification materials or test circumstances for either employee.[71] Moreover, Defendant has presented undisputed evidence that Soileau was applying for a different position (C Operator) and was subject to different testing standards under IP's policy.[72] Likewise, Sloan's ability to retest was due to his timely submission of paperwork within the 30-day testing window, a condition Plaintiff admittedly did not meet.[73] Resultingly, Plaintiff did not establish they he is similarly situated to Soileau or Sloan.

    b.  **White candidates access to faster training start times and special projects.**

Plaintiff also alleges white employees received more training time or access to "special projects." But again, Plaintiff received the full 168 hours of training required by IP policy.[74] Defendant also submitted evidence showing that any delay in Plaintiff's training was due to COVID-19 protocols, which Plaintiff acknowledged applied across the board.[75] Regarding special projects, Plaintiff concedes he never

---

[70] R. Doc. 27 at 13.
[71] R. Doc. 20-3 at 41.
[72] R. Doc. 20-4 at 4 ("Trent Solieau missed only one critical question during his certification panel. Pursuant to company policy, a certification panel was convened on a later date, and Mr. Solieau was afforded another attempt to answer that one question").
[73] *Id.* at 3 ("Billie Sloan also failed his certification panel. Mr. Sloan was allowed to retest only because he turned in his forms early enough and there was still time available in the 30-day window.")
[74] R. Doc. 20-4.
[75] R. Doc. 20-3 at 28.

expressed interest in participating[76] and that the only evidence of others being allowed to work on special projects occurred between 2021 and 2022—a time when Plaintiff was on medical leave.[77] Both COVID-19's protocols and the fact that Plaintiff was on medical leave during the timeframe for the evidence he cites on special projects are legitimate nondiscriminatory reasons that could account for the discrepancies in start times and special projects. Plaintiff has offered no evidence that those reasons are pretextual often stating in his deposition that he had no evidence to the contrary. On these reasons, he has not shown that similarly situated white employees received these opportunities under comparable circumstances.

        **c.**        **White candidates not being pulled from training to work.**

Plaintiff alleges that Defendant called Plaintiff off training to work due to being short-staffed while Plaintiff's white coworkers were not pulled from their training to work.[78] Defendant asserts that, by Plaintiff's own admission, he was the only employee training for the A Systems Operator position, he understood that he would still be required to work as a C Systems Operator while training, when he was pulled off of training, he went to work the semi-chem digester panel, which is something that an A Systems Operator is responsible for, so was still training on equipment for the job in which he was seeking promotion.[79]

Further, Defendant counters that by Plaintiff's own admission, being short-staffed is a legitimate nondiscriminatory reason to call someone off of training.

---

[76] R. Doc. 20-3 at 37.
[77] R. Doc. 20-3 at 51.
[78] R. Doc. 27 (citing R. Doc. 25-2 at 2).
[79] R. Doc. 32 at 6-7.

Further, Defendant reiterates that COVID-19 altered training protocols and Plaintiff knew as such.

The Court agrees with Defendant on both counts. Plaintiff has not sufficiently shown through competent summary judgment evidence that his being pulled off of training was not in line with IP's policies or identified another candidate outside his protected class who was certifying for the A Systems Operator position who was granted an exception to IP's requirement that candidates are still required to work and study for the new role at the same time. Even if Plaintiff had provided such evidence, Defendants have articulated legitimate nondiscriminatory reasons for the treatment and, by his own admission, Plaintiff does not have evidence that any such reason was pretextual and but for his race it would not have occurred.

Because Plaintiff has failed to identify any white employees who were similarly situated in terms of job position, timing, and procedural posture but treated more favorably, he has not met his burden to establish a prima facie case under § 1981.

### 3. Legitimate Non-Discriminatory Reasons and Pretext

Even assuming that Plaintiff had established a prima facie case, Defendant has articulated legitimate, non-discriminatory reasons for each challenged action: Plaintiff was denied retesting because he missed the 30-day submission window and failed so many critical questions that he was unable to attain a minimum passing score; Plaintiff's training delays stemmed from COVID-19 safety measures, not his race; and Plaintiff's exclusion from special projects was due to his medical leave, and no evidence suggests he was denied participation because of race.

To establish pretext, Plaintiff must provide evidence showing that these justifications are false and that but for his race, he would have been promoted or given additional certification opportunities. Plaintiff fails to do so. His opposition points largely to conclusory allegations and speculative comparisons, and he admitted multiple times during his deposition that he lacks evidence that white employees were treated more favorably because of race.

Accordingly, Plaintiff has failed to establish a prima facie case of racial discrimination under § 1981, and even if he had, he fails to present evidence of pretext sufficient to rebut Defendant's legitimate, non-discriminatory reasons. Therefore Plaintiff's § 1981 racial discrimination claim is dismissed.

### B.      § 1981 Retaliation Claim

To establish a prima facie case of retaliation under § 1981, a plaintiff must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action.[80] The burden of production then shifts to the defendant to articulate a legitimate, nonretaliatory reason for the alleged retaliatory action.[81] If the defendant satisfies this burden, the plaintiff must offer sufficient evidence that the proffered reason is a pretext for retaliation.[82] Ultimately, the plaintiff must prove that the adverse employment action would not have occurred *but*

---

[80] *Wantou v. Wal-Mart Stores Texas, L.L.C.*, 23 F.4th 422, 436-437 (5th Cir. 2022) (citing *Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir. 2007)).
[81] *Id.* at 437.
[82] *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005); *Gee v. Principi*, 289 F.3d 342, 345, 347 (5th Cir. 2002).

*for* the protected conduct.[83] Even if a plaintiff's protected conduct is a substantial element in a defendant's adverse employment action, there is no liability under § 1981 if the employer would have taken the same action regardless.[84]

In his Complaint, Plaintiff alleges that he was banned from all control room training and prohibited from working as a substitute in retaliation for reporting race discrimination.[85] In his opposition, Plaintiff expands on these claims—without record citation or evidentiary support—alleging for the first time that he was assigned to less desirable shifts with underqualified coworkers, wrongly blamed for a lockout issue, and subjected to delays in the processing of his leave paperwork, which allegedly caused him hardship.[86]

Defendant does not dispute that Plaintiff's complaint to human resources of racial discrimination in promotion practices at IP was protected activity.[87] However, Defendant asserts that Plaintiff cannot satisfy the remaining elements of a retaliation claim. Specifically, Defendant contends that Plaintiff suffered no adverse employment action, as he continued to work in the control room after his complaints and was not disciplined, demoted, or denied pay.[88] Notably, Defendant points to Defendant's deposition where in response to the question "[h]ave you at any time worked back in the control room after your complaint?" Plaintiff answered "[y]es, I worked -- yes."[89] Defendant emphasizes that Plaintiff was on leave for most of the

---

[83] *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 577 (5th Cir. 2020).
[84] *See Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996).
[85] R. Doc. 1 at 5.
[86] R. Doc. 27 at 19.
[87] R. Doc. 20-1 at 19.
[88] R. Doc. 32 at 7; (citing R. Doc. 20-3 at 44-45).
[89] R. Doc. 20-1 at 20 (citing R. Doc. 20-3 at 45).

relevant time period—from May 2021 to October 2021, and again from May 2022 onward—and has not returned to work since.[90] Further, Defendant notes that Plaintiff's assertion of being blamed for a lockout incident lacks evidentiary support—he was never formally disciplined, received no write-ups, and suffered no pay reduction or other adverse change in the terms of employment.[91] Finally, regarding Plaintiff's allegations of delay in processing his leave, Defendant alleges that the delay stemmed from Plaintiff's own failure to timely submit paperwork, and once received, his long-term disability benefits were approved and backdated.[92]

As to causation, Defendant argues that there is no evidence that the decision-makers responsible for scheduling or assigning duties were even aware of Plaintiff's complaints.[93] Plaintiff admitted in his deposition that he had *no evidence* that his managers were aware of his reports to human resources or that they took any action in response.[94]

The Court finds that Plaintiff has failed to establish a prima facie case of retaliation under § 1981. While Plaintiff engaged in protected activity by complaining of race discrimination to management and Human Resources, he has not demonstrated that he suffered a materially adverse employment action. Plaintiff continued to be scheduled for work in the control room following his complaints, consistent with his prior sporadic assignments. He was never disciplined, demoted, or denied any compensation. His additional allegations—raised for the first time in

---

[90] *Id.*
[91] R. Doc. 32 at 7.
[92] *Id.* (citing R. Doc. 20-3 at 59).
[93] R. Doc. 20-1 at 20-21.
[94] R. Doc. 20-1 at 20-21 (citing R. Doc. 20-3 at 36-37).

opposition—are unsupported by competent summary judgment evidence. More critically, Plaintiff testified that he has no evidence that his managers were aware of his protected activity.[95] The Fifth Circuit has stated that "[i]f an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct."[96] Plaintiff's opposition fails to cite any record evidence showing that the relevant decision-makers had such knowledge.

Accordingly, Plaintiff's § 1981 retaliation claim fails as a matter of law. Defendant is entitled to summary judgment on this claim.

## IV.  CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by International Paper Company is **GRANTED** and Plaintiff, Gabriel West's claims will be **DISMISSED WITH PREJUDICE**. All other pending motions will be **DENIED AS MOOT**. A judgment consistent with this ruling will be issued accordingly.

**THUS DONE AND SIGNED** this 25th day of June, 2025.

_____
**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[95] R. Doc. 20-3 at 36-37.
[96] *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) (citing *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir.1994)).